FILED

JUN 15 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NC-17-1152-FBTa |
| SYDNEY EILEEN SORENSEN, | Bk. No.   16-52281 |
| Debtor. | Adv. No.   17-05018 |
| SCHNITZEL, INC., dba R&J JEWELRY & LOAN, | |
| Appellant, | |
| v. | **OPINION** |
| SYDNEY EILEEN SORENSEN, | |
| Appellee. | |

Argued and submitted on May 25, 2018
at San Francisco, California

Filed – June 15, 2018

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Stephen J. Johnson, Bankruptcy Judge, Presiding

Appearances:    Jon Webster, The Law Offices of Jon Webster, argued on behalf of appellant Schnitzel, Inc., dba R&J Jewelry & Loan; David A. Boone, The Law Offices of David A. Boone, argued on behalf of appellee Sydney Eileen Sorensen.

Before: FARIS, BRAND, and TAYLOR, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

Appellant Schnitzel, Inc., dba R&J Jewelry & Loan ("R&J"), appeals from the bankruptcy court's ruling prohibiting R&J from disposing of chapter 13[1] debtor Sydney Eileen Sorensen's pawned jewelry. R&J argues that the bankruptcy court erred because the jewelry was excluded from Ms. Sorensen's estate by § 541(b)(8), and she could not extend her right to redeem the property through the bankruptcy process. We AFFIRM.

## FACTUAL BACKGROUND

R&J is a licensed pawnbroker in the state of California. In March 2016, Ms. Sorensen pledged five pieces of jewelry as collateral for five pawn loans with R&J. Four months later, she obtained replacement loans that had a termination date of November 18, 2016.

Prior to the termination date of the loans, Ms. Sorensen filed for chapter 13 bankruptcy protection. Her schedules identified R&J as a creditor holding claims secured by the pawned jewelry. Her proposed chapter 13 plan listed R&J as a secured creditor and sought to repay the loans and retain the jewelry.

On November 18, 2016, R&J issued a notice of loan termination, providing a ten-day right to redemption required by state law. Ms. Sorensen did not redeem the jewelry during the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

ten-day period.

Ms. Sorensen filed an amended chapter 13 plan,[2] which again identified R&J as a secured creditor and proposed to make $50 monthly payments on each of the five loans. R&J did not oppose plan confirmation.

Meanwhile, counsel for R&J and Ms. Sorensen communicated about the status and characterization of the pawn loans. R&J offered Ms. Sorensen two more extensions of her redemption rights; the final deadline was March 3, 2017.

On March 1, Ms. Sorensen filed an adversary proceeding complaint for injunctive and declaratory relief against R&J. She requested that the court issue an injunction preventing R&J from disposing of the jewelry, which she contended was part of the bankruptcy estate and therefore subject to the automatic stay.

Ms. Sorensen also filed an application for a temporary restraining order ("TRO Motion") to prevent R&J from disposing of the jewelry. She argued that she satisfied the standard for a temporary restraining order ("TRO") because she had "every intention to retain the liens and make payment on those liens to redeem possession of her jewelry, [and] she had clearly stated her intentions to retain the liens and redeem the property in her Chapter 13 Plan . . . ."

In opposition to the TRO Motion, R&J argued that Ms. Sorensen was unlikely to succeed on the merits because the

---

[2] The chapter 13 trustee raised several objections to the original plan, including whether R&J had properly received notice of the plan. The amended plan addressed the trustee's concerns, including notice to R&J.

3

jewelry was excluded from the bankruptcy estate pursuant to § 541(b)(8). It contended that, under § 541(b)(8)(C) and § 108(b), the redemption period relevant to a pawn loan expires on the later of (1) the loan termination date under state or local law or (2) sixty days from the date of the bankruptcy filing. Under California law, Ms. Sorensen had four months (until November 18, 2016) to redeem her jewelry; R&J then issued the statutorily-required grace notice extending the right of redemption until November 28. It contended that, because Ms. Sorensen did not redeem her property within the statutory period, the jewelry was excluded from the bankruptcy estate under § 541(b)(8), and the automatic stay never applied to the jewelry.

On March 28, 2017, the bankruptcy court confirmed Ms. Sorensen's amended plan. Later that same day, the bankruptcy court heard Ms. Sorensen's TRO Motion. In light of the earlier plan confirmation and additional arguments raised by Ms. Sorensen, the bankruptcy court ordered supplemental briefing and continued the hearing.

On March 31, R&J filed a motion to dismiss the adversary complaint ("Motion to Dismiss") under Civil Rules 12(b)(1) and (b)(6), made applicable in bankruptcy by Rule 7012(b), arguing that the bankruptcy court lacked subject matter jurisdiction over the pawned jewelry because it was excluded from the bankruptcy estate. It repeated that, under § 541(b)(8), the jewelry was not part of the bankruptcy estate: due to Ms. Sorensen's and "the Trustee's failure to redeem the property in the statutorily prescribed time limit, the property never entered the bankruptcy estate. If Plaintiff wished to include the pledged items in the

4

estate, Plaintiff was required to redeem them pursuant to Section 541(b)(8)(C) and Section 108(b)." It also argued that Ms. Sorensen failed to state a claim upon which relief could be granted: the "automatic stay does not in any way affect the statutory redemption period of Section 108 and Section 541(b)(8)(C). Plaintiff has not alleged, and cannot allege, that Debtor-Plaintiff or the Trustee attempted to redeem the property within the time prescribed by Section 108."

Following a hearing on the continued TRO Motion and the Motion to Dismiss, the bankruptcy court orally held that (1) R&J's notice of loan termination was likely void for violating the automatic stay; and (2) Ms. Sorensen's confirmed chapter 13 plan – including its treatment of the jewelry - was binding on the parties. It considered the interplay between three factors: state law, bankruptcy law, and the confirmed plan.

First, the court noted that California law allows a four-month loan period that expired on November 18, 2016. At that time, if R&J properly provided statutory notice and a ten-day redemption period to Ms. Sorensen, then, "[p]ursuant to California Finance Code Section 21201, R&J would be vested with all right, title, and interest in the jewelry after the expiration of the ten-day period."

Second, the bankruptcy court considered how Ms. Sorensen's bankruptcy case affected the parties' rights. It stated that, when she filed her petition, her estate included her option to redeem the jewelry. However, under § 541(b)(8), certain tangible property pledged to pawnbrokers is excluded from property of the estate unless the debtor redeems the property within the time

5

allowed under § 108(b). That section provides that the redemption period is the later of sixty days after the petition is filed or the period set by state law. But the bankruptcy court noted that the time period under state law had not expired because the ten-day notice that R&J sent violated the automatic stay:

> Here, R&J never sent a proper notice of loan termination. Section 362(a)(6) enjoins any act to collect, [assess], or recover a claim against the debtor that arose before the property of the — the commencement of the case. Nothing in 541(b)(8), which is the section that talks about ownership[ ] of these assets[,] creates an exception to the automatic stay. So relief from stay is required before any collection action can begin. And the reference here is 5 Collier on Bankruptcy, at 541 — paragraph 541.24.
>
> R&J never moved for relief from stay, which likely would have been granted in view of Section 541(b)(8). And it would have allowed R&J to send the notice required by California law. As everyone knows, actions taken in violation of the stay are void. So it is as if R&J never sent the notice and the ten-day redemption period never began. Accordingly, title to the property was never vested in R&J.

Third, the bankruptcy court considered the effect of Ms. Sorensen's confirmed plan. It stated that the plan controlled the disposition of the jewelry under § 1327(a) and Espinosa v. United Student Aid Funds, Inc., 553 F.3d 1193 (9th Cir. 2008), aff'd, 559 U.S. 260 (2010). The court entered an order granting the TRO Motion and denying the Motion to Dismiss ("Order").

R&J filed a timely notice of appeal from the Order and a motion for leave to appeal. The BAP motions panel remanded the case to the bankruptcy court for a determination whether the Order granted a TRO, and is thus interlocutory, or whether the Order granted a preliminary injunction and is immediately reviewable on appeal. The bankruptcy court clarified that,

6

despite language indicative of a TRO, the Order constituted a preliminary injunction. The bankruptcy court also supplemented the reasoning behind the Order, stating that Ms. Sorensen sought to retain ownership of the jewelry through a confirmed plan that "treated the Property as collateral for a secured claim held by R&J and called for payment of that secured claim over time. R&J did not object to any of Plaintiff's Chapter 13 plans. . . . The Court continues to believe the confirmed Chapter 13 plan controls the Property."

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in denying R&J's Motion to Dismiss and granting Ms. Sorensen a preliminary injunction preventing R&J from disposing of the jewelry.

## STANDARD OF REVIEW

The issues before the Panel are purely questions of law, which we review de novo. Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee), 218 B.R. 916, 919 (9th Cir. BAP 1998), aff'd, 193 F.3d 1083 (9th Cir. 1999) ("We review conclusions of law, including the bankruptcy court's interpretation of the Bankruptcy Code, de novo."). De novo review is independent and gives no deference to the trial court's conclusion. Roth v. Educ. Credit Mgmt. Agency (In re Roth), 490 B.R. 908, 915 (9th Cir. BAP 2013).

7

**DISCUSSION**

**A.  R&J did not validly terminate Ms. Sorensen's right to redeem the jewelry.**

The overarching question before the Panel is whether the pawned jewelry is still property of the bankruptcy estate.  This appears to be a question of first impression in this circuit.  We agree with the bankruptcy court's reasoning.

**1.  When Ms. Sorensen filed for bankruptcy protection, her interest in the jewelry became part of the bankruptcy estate.**

We must first decide how Ms. Sorensen's bankruptcy petition affected the parties' respective interests in the jewelry.

Under § 541(a), an estate is created at the filing of a bankruptcy petition that contains, subject to certain exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case."  § 541(a)(1).  "[A] pre-foreclosure right to redeem is a property right under section 541 . . . ."  Harsh Inv. Corp. v. Bialac (In re Bialac), 712 F.2d 426, 431 (9th Cir. 1983).  This includes rights that a debtor retains in her pawned property.  See Title Max v. Northington (In re Northington), 876 F.3d 1302, 1309–10 (11th Cir. 2017) (agreeing that the debtor "retained property interests in the [pawned property] that became 'property of the estate' under 11 U.S.C. § 541.  In particular, the parties agree that the car, which remained in [the debtor's] possession, as well as the associated right to redeem it — which at that time had not yet expired — entered the estate with the filing of his petition").

In the present case, when Ms. Sorensen filed her bankruptcy petition, all of her interests in her jewelry at that time became

8

part of her bankruptcy estate. See Cty. of Imperial Treasurer-Tax Collector v. Stadtmueller (In re RW Meridian LLC), 564 B.R. 21, 28 (9th Cir. BAP 2017) ("The nature and extent of the debtor's interests in property must be determined by nonbankruptcy law."); Cal. Fin. Code. § 21201(a), (f). The bankruptcy court correctly held that her estate included her right to redeem her jewelry.

**2. Under California law, § 541(b)(8) does not automatically exclude pawned property from the bankruptcy estate without notice to the pawnor.**

R&J argues that the plain language of § 541(b)(8) automatically exempts the pawned property from the bankruptcy estate. That subsection provides that:

(b) Property of the estate does not include--

. . .

(8) subject to subchapter III of chapter 5, any interest of the debtor in property where the debtor pledged or sold tangible personal property (other than securities or written or printed evidences of indebtedness or title) as collateral for a loan or advance of money given by a person licensed under law to make such loans or advances, where -

(A) the tangible personal property is in the possession of the pledgee or transferee;

(B) the debtor has no obligation to repay the money, redeem the collateral, or buy back the property at a stipulated price; and

(C) neither the debtor nor the trustee have exercised any right to redeem provided under the contract or State law, in a timely manner as provided under State law and section 108(b)[.]

§ 541(b)(8). The parties do not dispute that subsections (A) and (B) are satisfied; only (C) is at issue in this appeal. We thus look to § 108(b) and the relevant state law.

9

Section 108(b) provides:

> (b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of -
>
> > (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> > (2) 60 days after the order for relief.

§ 108(b).

In this case, California law provides the longer period for redemption of pawned property. California Financial Code section 21201 provides that, if a pawned item is not redeemed before the end of the loan period, the pawnbroker must give notice of the loan termination and provide a ten-day redemption period:

> (d) If any pledged article is not redeemed during the loan period as provided herein, and the pledgor and pawnbroker do not mutually agree in writing to extend the loan period, **the pawnbroker shall notify the pledgor within one month after expiration of the loan period.** If the pawnbroker fails to notify the pledgor within one month after the expiration of the loan period, the pawnbroker shall not charge interest from the day after the expiration of the one-month period. **The pawnbroker shall notify the pledgor** at his or her last known mailing or electronic address **of the termination of the loan period,** by a means for which verification of mailing or, at the sole option of the pledgor, electronic transmission of the notification can be provided by the pawnbroker, **and extending the right of redemption, during posted business hours, for a period of 10 days from date of mailing or electronic transmission of that notice.**

Cal. Fin. Code § 21201(d) (emphases added). California law specifies that the pawnbroker only becomes vested with full

10

ownership of the property after the ten-day period expires:

> (f) If any pledged article is not redeemed within the 10-day notice period, **the pawnbroker shall become vested with all right, title, and interest of the pledgor**, or his or her assigns, **to the pledged article**, to hold and dispose of as his or her own property.

Cal. Fin. Code § 21201(f) (emphases added); see Cal. Fin. Code § 21002(b) ("'Vested property' is property the title to which has been transferred from the pledgor to the pawnbroker pursuant to Section 21201. Vested property is not pledged property.").

In other words, the right to redeem pawned property under California law does not expire until ten days after the pawnbroker gives proper notice to the pledgor.

In the present case, Ms. Sorensen filed for bankruptcy protection on August 9, 2016. The replacement loans terminated on November 18, 2016. Pursuant to California Financial Code section 21201(d), R&J then issued the notice of the ten-day right of redemption. Ms. Sorensen did not redeem the jewelry during the ten-day period.

R&J contends that, because Ms. Sorensen failed to redeem the jewelry during the ten-day period, the pawned jewelry was excluded from the bankruptcy estate under § 541(b)(8)(C). But as we explain in the next section, the ten-day notice was void because R&J issued it in violation of the automatic stay.

**3. The statutory redemption notice was void because R&J failed to seek relief from stay.**

The automatic stay prevents a creditor from taking certain actions against property of the bankruptcy estate. In relevant part, § 362 provides:

11

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of -

. . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

. . .

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

§ 362(a)(3), (5), (6).

R&J's issuance of the ten-day notice was an act "to exercise control over property of the estate[,]"[3] to "enforce a lien [that] . . . secures a claim[,]" and "to collect, assess, or recover a claim against the debtor[.]"[4]  It thus violated § 362(a).  "Actions taken in violation of the automatic stay are void."  In re RW Meridian LLC, 564 B.R. at 28.  Because the ten-day notice was void ab initio, R&J did not satisfy the notice

---

[3] R&J already had "control" of the jewelry in the sense of physical possession.  The notice (if effective) would have given it complete control by permitting it to sell the jewelry and keep the proceeds.  Cal. Fin. Code § 21201(d), (f).  Therefore, the notice violated § 362(a)(3).

[4] R&J's loans were nonrecourse, meaning that if the proceeds of sale of the jewelry were insufficient to repay the loans in full, R&J had no recourse against Ms. Sorensen for the deficiency.  This is immaterial, because § 102(2) provides that "'claim against the debtor' includes claim against property of the debtor . . . ."  In other words, nonrecouse claims are "claims" for bankruptcy purposes.

12

requirement in California Financial Code section 21201(d).

Accordingly, the ten-day redemption period never began to run under subsection (d), Ms. Sorensen's redemption right was never extinguished, R&J never took title to the jewelry under subsection (f), and § 541(b)(8) did not remove the jewelry from the estate.

This case is distinguishable from cases decided in other jurisdictions with different state statutes. For example, in Northington, the Eleventh Circuit held that, under state law automatically vesting title in the pawnbroker at the expiration of the redemption period, the pawned property "dropped out" of the estate pursuant to § 541(b)(8). 876 F.3d at 1306. In that case, the debtor failed to redeem prepetition pawned property, and the pawnbroker sought relief from stay and argued that the property was excluded from the estate pursuant to § 541(b)(8). The Eleventh Circuit started with the proposition that the debtor's interest in the pawned property became property of the estate when he filed his bankruptcy petition. Id. at 1309. But it stated that "an estate is not necessarily 'frozen in time,' but rather can, in certain circumstances, expand or contract in accordance with the operation of underlying state-law property rules." Id. at 1314. The court held that, by operation of state law, the pawned property "dropped out" of the estate:

> Properly understood, the Bankruptcy Code takes an estate's constituent property interests as it finds them. If an asset is by its state-law nature static, then it remains so in the bankruptcy estate. **If, by contrast — as is often the case — state law imbues an estate asset with a sort of internal dynamism, then that characteristic will follow the asset into the estate. . . .**

13

But increase will not always be the result — sometimes the dynamism will reduce (or even eliminate) an asset's value. Think, for instance, about a debtor whose bankruptcy estate includes an option contract. If the debtor fails to exercise the option in accordance with state law, then the right to buy disappears. This case reflects the same basic phenomenon. Under Georgia's pawn statute, following his loan's maturity date, Wilber had a conditional right to possess the Charger as well as a right to redeem it during the statutory period. But after the expiration of the prescribed period, Wilber had no rights in the car, possessory or otherwise. Rather, his rights had been "automatically . . . extinguished" and "automatically forfeited to [TitleMax]."

Id. at 1314–15 (emphasis added).

We agree with the Northington court's analysis,[5] but the result here is different because Georgia's pawnshop law differs from California's. In Georgia, following a statutory redemption period, the interest in the pawned property is **automatically** vested in the pawnbroker; the pawnbroker does not need to take any action. Ga. Code Ann. § 44-14-403(b)(3) ("Pledged goods not redeemed within the grace period shall be automatically forfeited to the pawnbroker by operation of this Code section, and any ownership interest of the pledgor or seller shall automatically be extinguished as regards the pledged item."). In contrast, California Financial Code section 21201(d) required R&J to send notice to Ms. Sorensen before it obtained legal title to the

---

[5] In particular, we agree that pawned property "drops out" of the estate if the redemption right is not timely exercised. R&J argues that pawned property does not enter the estate at all unless and until the debtor or trustee timely exercises the redemption right. The Northington court's view is more consistent with the language and structure of § 541(b)(8). That section expressly permits the debtor **or the trustee** to redeem the property. If the redemption right were not property of the estate, the trustee could not exercise it.

14

jewelry. That notice, as discussed above, was void because it violated the automatic stay.[6]

R&J points out that this analysis treats California pawnshops differently from pawnshops in other states that do not require the pawnbroker to give notice of termination of the redemption right.[7] R&J argues that this result is unfair and

[6] This is not to say that § 362(a), rather that § 108(b), controls the redemption period. We agree with other courts in our circuit that have held that § 362(a) does not toll redemption periods. See, e.g., In re York, No. 16-01964-FPC13, 2016 WL 6157432, at *3 (Bankr. E.D. Wash. Oct. 21, 2016) ("This court finds more persuasive courts finding that § 362(a) does not toll the running of the time period for redemption, and that the only available extension of time for such periods is the 60 days provided for in § 108(b). . . ."); In re Mosher, No. 07-60007-13, 2007 WL 1487399, at *7 (Bankr. D. Mont. May 17, 2007) ("Debtors' argument that their redemption period was tolled by the automatic stay is contradicted by the plain language of § 541(b)(8)(C) which specifically invokes § 108(b) for determining whether a debtor or trustee has exercised any right to redeem in a timely manner."); see also In re Northington, 876 F.3d at 1313 (rejecting the notion that "the automatic-stay provision applies to toll an as-yet-unexpired state-law redemption period indefinitely, thereby preventing the period from lapsing and (in effect) keeping pawned assets in the estate"). Section 362(a) is still relevant, however, in cases like this one, where a redemption period does not start running until the creditor gives a notice, and the automatic stay prevents the creditor from giving that notice.

[7] Pawnshop laws vary widely from state to state. See, e.g., Del. Code Ann. § 2307(b) (prohibiting the pawn of prosthetic limbs); Clark County, Nev. Ord. 6.24.150 (stating that it is illegal to accept pawned goods from someone known to be a "habitual drunkard" or "an insane person"). Most state laws provide that pawned property "automatically" vests in the pawnbroker when the redemption period expires, but a minority (including California) require the pawnbroker to give notice to the pawnor before the pawnbroker acquires full title to the property or sells the property. Thirteen jurisdictions (California, Kentucky, Massachusetts, New Jersey, New Mexico, New
(continued...)

15

inappropriate. We agree that application of state law in this context produces different results in different states, but this is neither wrong nor even unusual. "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." Butner v. United States, 440 U.S. 48, 55 (1979). "[U]ndefined considerations of equity provide no basis for adoption of a uniform federal rule" displacing state property law. Id. at 56.

Accordingly, Ms. Sorensen's redemption rights did not terminate because R&J did not obtain relief from the automatic stay before giving the ten-day notice. The bankruptcy court did not err.

---

[7](...continued) York, Ohio, Oregon, Pennsylvania, South Carolina, Wisconsin, District of Columbia, and Guam) require notice. See, e.g., Ohio Rev. Code Ann. § 4727.11 ("the licensee shall notify the pledgor . . . [that] the pledged property shall be forfeited to the licensee"); Or. Rev. Stat. § 726.400(3)("the pawnbroker may not deem a pledge to be forfeited until: (a) The pawnbroker notifies the pledgor that the pledge is at risk of forfeiture . . ."); Wis. Stat. Ann. § 138.10 ("A pawnbroker shall not sell any pledge unless due notice of such contemplated sale has been forwarded to the pledgor . . . ."). A few other jurisdictions require that the pawnshop give public notice of the upcoming sale. See 19 R.I. Gen. Laws Ann. § 19-26-10; V.I. Code Ann. tit. 9 § 228. Still others have no pawnshop laws or leave the regulation up to local government. But the majority of jurisdictions do not require further notice or simply do not speak to any further notice requirement prior to the pawnshop acquiring full interest in the pawned property. Our holding here only applies where applicable nonbankruptcy law requires the pawnbroker to give notice in order to terminate the pawnor's rights in the property.

16

**B.    We need not decide whether the plan has preclusive effect.**

The bankruptcy court alternatively held that R&J was bound by the terms of the confirmed plan, which treated R&J as a secured creditor and provided for redemption of the pawned jewelry.  We do not reach this issue on appeal because we are affirming the decision on another, independently sufficient ground.

CONCLUSION

The bankruptcy court did not err when it denied the Motion to Dismiss and granted the TRO Motion.  We AFFIRM.